**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LUKA KVINIKADZE, individually and on behalf
of all others similarly situated,

                  Plaintiffs,

        vs.

OPTIMUM, CSC HOLDINGS, LLC, ALTICE
USA, INC., ASI FIBER GROUP, and GUREEV
LLC,

                  Defendants.

Civil Action No.: 1:23-cv-2922

**CLASS AND COLLECTIVE ACTION**
**COMPLAINT FOR DAMAGES,**
**RESTITUTION, INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

Plaintiff, individually and on behalf of all others similarly situated, by their attorneys, The

Law Office of Christopher Q. Davis, PLLC, allege, upon personal knowledge and upon

information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1.      This is a collective and class action by Individual and Representative Plaintiff Luka

Kvinikadze ("Plaintiff") and all putative plaintiffs (collectively "Plaintiffs"), on behalf of

themselves and on behalf of the proposed Collective and Classes identified below. Plaintiff and

the members of the putative Collective and Classes were or are employed by Defendants Optimum,

CSC Holdings LLC, Altice USA INC, ASI Fiber Group, and Gureev LLC (collectively the

"Defendants") in the United States (collective claims) and New York (class claims) during the

relevant Class and Collective Periods as "Cable Layers" who installed Optimum fiber optic cables

throughout Optimum's service areas.

2. Plaintiff and the putative Collectives and Classes were affected by one or more of the Defendants' unlawful policies and practices, including completely failing to compensate Cable Layers for their labor, and purporting to calculate earned wages based on feet of cable installed rather than the number of actual hours worked during a workweek. Through these policies and practices, Defendants unlawfully denied Plaintiff and the putative collective and classes payment of actual wages earned and overtime premiums for all hours worked over 40 in a workweek, failed to pay minimum wage for all hours worked, failed to compensate for spread of hours, failed to reimburse business expenses, failed to pay Plaintiff on a weekly basis, failed to furnish accurate wage statements, and engaged in various other recordkeeping practices and notice failures that violated both federal and state laws.

3. Plaintiffs are all similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the Federal Rule of Civil Procedure 23 and have suffered the same violations pursuant to Defendants' common policies and practices.

4. The Collective is made up of all persons who are or have been employed by Defendants as Cable Layers anywhere in the United States within the period of three years from this action's filing date through the date of the final disposition of this action (the "Collective Period") and who were subject to Defendants' unlawful policies and practices of: (i) failing to pay Cable Layers earned wages; (ii) purporting to calculate wages per feet of cable installed rather than by actual hours worked within a workweek; (iii) failing to provide Cable Layers with any method or procedure for recording actual hours worked, resulting in Defendants' failure to pay the Collective their overtime premiums for all hours worked over 40 hours during the Collective Period; (iv) failing to maintain proper recordkeeping practices; all in violation of the Fair Labor Standards Act ("FLSA").

5.      The Class(es) are made up of all persons who are or have been employed by Defendants as Cable Layers in New York State within the period of six years prior to the filing date (the "Class Period") and who were subject to Defendants' aforementioned unlawful policies and practices resulting in the following violations of the New York Labor Law ("NYLL"): (i) failure to pay overtime premiums for all hours worked in excess of forty hours within a workweek, (ii) failure to pay the minimum wage for all hours worked, (iii) unlawful deductions from wages for business expenses, whether directly or indirectly; (iv) failure to pay Cable Layers on a weekly basis; (v) failure to furnish wage notices at the time of hiring; (vi) the failure to provide accurate wage statements on each payday that includes the information required by the NYLL, including the actual number of hours worked during the pay period; (vii) failing to maintain proper recordkeeping practices, and (viii) failing to pay Cable Layers for the work done in the course of employment.

6.      Plaintiff seeks relief for the Collective under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq*., and for the Classes pursuant to the applicable provisions of the New York Labor ("NYLL"), §§ 190 *et seq*., to remedy the Defendants' failure to pay all wages due and for recordkeeping failures, in addition to injunctive relief.

## PARTIES

7.      Plaintiff Luka Kvinikadze resides in the State of Vermont. From around May 1, 2022, through June 10, 2022, Plaintiff was employed to do manual work as a Cable Layer, installing fiber optic cable in New York for Optimum by virtue of subcontractor agreements through ASI Fiber Group, and Gureev LLC. At all relevant times, Plaintiff was an "employee" of Optimum, CSC Holdings LLC, Altice USA INC, ASI Fiber Group, and Gureev LLC, within the

meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Mr. Kvinikadze will be filed with the Court.

8.     Defendant Gureev LLC ("Gureev") is incorporated under the laws of the State of Florida and registered as a domestic business corporation in the State of New York. Gureev maintains its principal place of business at 2213 60th St., Brooklyn, New York, 11204. Upon information and belief, Gureev has an annual gross volume of sales in excess of $500,000.

9.     Defendant ASI Fiber Group by and through various contractual relationships with Gureev LLC and Optimum, is paid to install fiber optic cables throughout New York.

10.     Upon information and belief, Defendant ASI Fiber Group maintains its principal place of business in Melville, New York.

11.     Upon information and belief, ASI Fiber Group has an annual gross volume of sales in excess of $500,000.

12.     Defendant Optimum is incorporated under the laws of the State of Florida and is registered to do business as a domestic business corporation in the State of New York. Optimum maintains its principal place of business at 1 Court Square West, Long Island City, New York, 11101. Optimum has an annual gross volume of sales in excess of $500,000.

13.     Defendant Altice USA, Inc., ("Altice") provides broadband communications in the United States. Altice is incorporated under the laws of the State of Delaware and registered to do business as a domestic business corporation in the State of New York. Altice maintains a principal place of business at 1 Court Square West, Long Island City, New York, 11101. Altice has an annual gross volume of sales in excess of $500,000.

14.     Defendant CSC Holdings, LLC ("CSC Holdings") operates as a holding company of various subsidies including, Altice. CSC Holdings provides cable and telecommunications

services throughout the United States. CSC Holdings is incorporated under the laws of the State of Delaware and registered to do business as a domestic business corporation in the State of New York. CSC Holdings maintains its principal place of business at 1111 Stewart Ave, Bethpage, New York, 11714. Upon information and belief, CSC Holdings has an annual gross volume of sales in excess of $500,000.

15.     Defendant Optimum possesses and regularly exercises sufficient control over the day-to-day operations of Cable Layers hired by Gureev to be considered Plaintiffs' employer under the FLSA and NYLL. Upon information and belief, Optimum created the policies and practices that are the subject matter of this lawsuit, provides equipment and tools for Cable Layers to lay Optimum cables, and sets cable laying routes.

16.     Based on the above, at all relevant times, each of the Defendants were the "employers" of Plaintiff and members of the Collective and Class(es) under all applicable statutes.

### JURISDICTION AND VENUE

17.     This Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1332(a)(1), because the matter in controversy in this civil action exceeds $75,000 exclusive of interest and costs and because the parties are residents of different states.

18.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

19.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction), because these claims arise from the same occurrence or transaction and are so related to Plaintiff's FLSA claim as to form part of the same case or controversy.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the acts and omissions giving rise to Plaintiff's claims occurred in this District, and the Defendants all have significant business contacts within this District.

## FACTUAL ALLEGATIONS

### Optimum, ASI Fiber Group, and Gureev are Joint Employers.

21.     Mr. Kvinikadze and the members of the putative Collective and putative Classes are presently, or were formerly, jointly employed by the Defendants as Cable Layers.

22.     Upon information and belief, Optimum contracted with ASI Fiber Group to install Optimum cable in the New York Metropolitan area.

23.     Upon information and belief, ASI Fiber Group then contracted with Gureev to provide laborers to lay Optimum cable to fulfill ASI Fiber Group's contractual obligations to Optimum.

24.     Defendants advertised that they were hiring Cable Layers in an advertisement on RussRek.com, a website that posts job listings and other classified advertisements in Russian.

25.     Mr. Kvinikadze and at least some other members of the putative Collective and Classes responded to the advertisements on RussRek.com.

26.     Defendants hired Cable Layers through subcontractor, Gureev, to install fiber optic cables for Optimum.

27.     Gureev LLC is owned by Sergey Gureev.

28.     Surgey Gureev was Plaintiff's point of contact and Mr. Gureev directly oversaw Plaintiff's work as a Cable Layer.

29.      Sergey Gureev instructed Mr. Kvinikadze to create his own LLC, to which Mr. Gureev promised to wire payments for work performed by Mr. Kvinikadze.

30.     Mr. Kvinikadze was instructed by Sergey Gureev to arrive at 2605 Ocean Avenue, Brooklyn, New York, each day at around 5:00 a.m. From there, Mr. Kvinikadze and other Cable Layers were transported in vans to Defendants' worksites in Long Island to complete cable installation work.

31.     Defendants uniformly, and pursuant to a common policy, misclassified Plaintiff and all other Cable Layers as independent contractors.

32.     Plaintiff and the putative Collective and Classes were economically dependent on Optimum because their manual labor was exclusive to laying Optimum fiber optic cables in Optimum service areas.

33.     Upon information and belief, Optimum was responsible for establishing when, where, and how Cable Layers would perform their job.

34.     Upon information and belief, Optimum created and provided the daily service maps distributed to Cable Layers which showed where they would be installing cable each day.

35.     Upon information and belief, Cable Layers were picked up by Defendants at a predetermined location and driven in Defendants' vans to various worksites to complete cable installations.

36.     Cable Layers were provided with maps detailing where fiber optic cables were to be installed. Upon information and belief, all maps came directly from Optimum.

37.     Cable Layers were not permitted to reject assigned maps or pick the map they wished to work on.

38.     To complete the maps assigned each day, the Cable Layers often worked from 5:00 am-9:00 pm.

39.     Due to the aforementioned practices and policies, Cable Layers were not able to work for other companies during their time of employment with Defendants.

40.     Upon information and belief, Optimum employees and agents, along with employees and agents of the other Defendant entities, trained Cable Layers on how to lay and splice cable before engaging the Cable Layers to begin work.

41.     Optimum provided Cable Layers with the equipment and tools needed to perform the job.

42.     Cable Layers were instructed to hold themselves out as Optimum employees when interacting with members of the public.

43.     For example, when Optimum provided maps of the covered residential service areas, Cable Layers were told to knock on the homeowners' door and represent themselves as Optimum workers seeking consent to work on the homeowners' property.

44.     When homeowners did not allow Cable Layers to enter, Cable Layers would put the homeowner on the phone with someone who, upon information and belief, was an Optimum employee.

45.     Residential Optimum customers would often ask the Cable Layers questions about Optimum services.

46.     Defendants determined how Cable Layers were paid and at what rate.

47.     For example, Defendants committed to paying each Cable Layer $0.20 per foot of cable installed, based off the measurements on the Optimum installation maps rather than on-the-ground measurements.

48.     Defendants refused to pay Cable Layers for the distance of cable they were required to coil along an installation.

49. The manual labor conducted by the Cable Layers was integral to Optimum's business operations; without the installation of Optimum fiber optic cables, Optimum would not be able to provide fiber optic services to customers.

**Cable Layers Were Manual Workers**

50. Plaintiff Kvinikadze and other Cable Layers spent well over 25% of their working hours engaged in physical labor, which included, but was not limited to, unloading cable lines from Defendants' vans, laying cables down, cutting trees, splicing cable, using power tools, wrenches, lashers, and tree cutters, to ensure that cables were properly installed along mapped routes.

51. As such, Mr. Kvinikadze and all other Cable Layers were and are manual workers within the meaning of NYLL § 190.

**Rates of Pay and Hours Worked**

52. On or about May 1, 2022, Defendants hired Mr. Kvinikadze as a Cable Layer for a rate of $0.20 per foot of cable he installed.

53. Defendants told Mr. Kvinikadze that this rate would typically amount to around $2,000 of gross income per week.

54. Defendants never paid Mr. Kvinikadze any of his earned wages from the six-week period that he was employed by them.

55. Mr. Kvinikadze tried to speak with Sergey Gureev regarding his unpaid wages and received no response.

56. At all relevant times, upon information and belief, Defendants had a uniform practice of promising to paying Cable Layers per cable laid, regardless of total hours worked.

57.    Upon information and belief, all Cable Layers were told they would be paid around $2,000 per week, regardless of total hours worked.

58.    During his employment with Defendants, Mr. Kvinikadze's typical workday began at 5:00 a.m. when he and other Cable Layers were picked up at 2605 Ocean Avenue, Brooklyn, New York and transported by van to worksites within Optimum service areas in Long Island.

59.    The Cable Layers would work until it was too dark to continue, and would be dropped off at 2605 Ocean Avenue as late as 9:00 p.m.

60.    During his employment with Defendants, Mr. Kvinikadze worked every day, and would only be called off of work the night before if there was rain in the forecast for the next day.

61.    As such, Mr. Kvinikadze regularly worked significantly over 40 hours per week.

62.    On average, Mr. Kvinikadze worked 16-hour days, from 5:00 am to 9:00 pm, six or seven days a week for a total of around 96 to 112 hours per week.

63.    Upon information and belief, Defendants required all Cable Layers to regularly work the same schedule from 5:00 am to 9:00 pm, because, as set forth above, the Cable Layers had to work until they completed all of their assigned maps.

64.    Based on Mr. Kvinikadze's personal observations, all other Cable Layers were similarly required to meet at the pickup location at 2605 Ocean Avenue in Brooklyn, New York, at the beginning of each workday.

65.    Two or more Cable Layers were assigned to each of Defendants' work vans, and upon information and belief, there were approximately ten vans dispatching from 2605 Ocean Avenue to perform work for the Defendants during each workday.

66.    Upon information and belief, there was significant turnover of Cable Layers due to the grueling hours and deficient pay and, as a result, the number of Cable Layers who performed

work for Defendants was far greater than the number of Cable Layers observed by Plaintiff Kvinikadze.

67.     Based on Mr. Kvinikadze's personal observations and experience, Cable Layers worked until their Optimum map was completed or until it was too dark to continue the installation work.

68.     During his employment with Defendants, Mr. Kvinikadze was not given time to take a lunch break.

69.     Upon information and belief, Defendants had a uniform policy of not providing Cable Layers with a bona fide lunch break.

**Defendants Failed to Reimburse Plaintiffs for Business Expenses**

70.     During his employment with Defendants, Mr. Kvinikadze regularly paid for gas to fill the tank of Defendants' van driven throughout the workday.

71.     Mr. Kvinikadze was never reimbursed for any of the money he spent on gas to perform cable laying services on behalf of Defendants.

72.     Upon information and belief, Defendants did not reimburse any Cable Layers for money expended on gas throughout their workday.

73.     Mr. Kvinikadze was required to buy his own vest to complete his work uniform as required.

74.     Mr. Kvinikadze was never reimbursed for any of the money he spent on his uniform required to lay cable on behalf of Defendants.

75.     Upon information and belief, it was the policy of Defendants not to provide reimbursement for gear bought by Cable Layers required to perform services for Defendants.

**Failure to Furnish Wage Statements and/or Wage Notices**

76. During his employment with Defendants, Mr. Kvinikadze never received a wage statement or a wage notice, as required by the Wage Theft Prevention Act ("WTPA").

77. Upon information and belief, it was Defendants' uniform policy to not provide wage statements which, under the WTPA, must include: (1) employer's name, address, and phone number; (2) employee's name; (3) dates covered by payment (pay period); (4) basis of payment (hourly, salary, commission, etc.); (5) rates paid (regular and/or overtime); (6) hours worked (regular and/or overtime); (7) allowances or credits applied against wages; (8) gross wages; (9) any deductions from wages; and (10) net wages.

78. As of the time of this filing, Defendants did not pay Mr. Kvinikadze for any of his work from the time he was employed by Defendants.

## COLLECTIVE ACTION ALLEGATIONS

79. Plaintiff Kvinikadze brings FLSA claims on behalf of himself, and other individuals similarly situated, as authorized under 29 U.S.C. § 216(b). The individuals similarly situated in the Collective are:

Proposed Collective: All persons who are, or have been, employed (whether classified as independent contractors or employees) by Defendants as Cable Layers in the United Sates within the period of the past three years prior to this action's filing date through the date of the final disposition of this action who worked over 40 hours in at least one workweek during the Collective Period and were not paid overtime premiums or were not provided any method or procedure for recording actual hours worked.

80. Defendants hired Plaintiff Kvinikadze and the Collective during the Collective Period.

81. Plaintiff Kvinikadze began working for Defendants on or around May 1, 2022, as a "Cable Layer."

82.     All Cable Layers had common job descriptions and performed the same duties, namely reporting to locations designated on Optimum service area maps or being driven by Defendants to map locations to install and splice fiber optic cable lines.

83.     The Cable Layers' general duties included reviewing the installation maps provided to them by Defendants and installing (or laying) cables across difficult terrain and thickly settled neighborhoods.

### FEDERAL RULES OF CIVIL PROCEDURE
### RULE 23 NEW YORK CLASS ALLEGATIONS

84.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the followed defined classes:

Proposed Classes:   **1**. **NYLL Overtime Class**: All persons who are or have been employed by Defendants as Cable Layers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period **and** who during at least one workweek were subject to Defendants' common policy and practice of failing to pay overtime premium for hours worked above 40 in a workweek in violation of the NYLL.

**2**. **NYLL Deduction Class**: All persons who are or have been employed by Defendants as Cable Layers in New York within the period of six years prior to this action's filing date through the date of final disposition of this action who worked at least one workweek during the Class Period **and** were subject to Defendants' common policy of deducting, either directly or by separate transaction, or failing to reimburse, necessary work-related expenses in violation of the NYLL.

**3**. **NYLL Spread of Hours Class**: All persons who are or have been employed by Defendants as Cable Layers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period **and** who during at least one workweek were subject to Defendants' common policy and practice of failing to pay spread of hours pay on days in which Cable Layers worked ten or more hours in one single day in violation of the NYLL.

**4. NYLL Frequency of Pay Claims**: All persons who are or have been employed by Defendants as Cable Layers in New York within the period of six years prior to this action's filing date through the date of final disposition of this action who worked at least one workweek during the Class Period and were subject to Defendants' common policy and practice of not paying on a weekly basis and failing to pay no later than seven calendar days after the end of the week in which the wages are earned in violation of the NYLL.

**5. NYLL WTPA Class:** All persons who are or have been employed by Defendants as Cable Layers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period and were subject to Defendants' common policy and practice of not providing lawful pay statements and/or wage notices in violation of the NYLL.

85. Plaintiffs incorporate by reference the facts alleged in the preceding paragraphs above.

86. <u>Numerosity</u>: The Proposed Classes are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis, alleges, that during the relevant time period, Defendants employed *at least* 20 individuals who satisfy the definition of the Proposed Classes.

87. <u>Typicality</u>: Plaintiff's claims are typical of the members of the Proposed Classes. Plaintiff is informed by other Cable Layers that the putative Classes were subject to the same aforementioned unlawful policies during the Class Period. Plaintiff, and all other Cable Layers, were undercompensated in the same manner. All Plaintiffs were subject to Defendants' unlawful policies and practices as alleged more fully above.

88. <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

89.     Adequacy: Plaintiff will fairly and adequately protect the interests of the Proposed Classes and has retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

90.     Commonality: Common questions of law and fact exist to all members of the Proposed Class and predominate over any questions solely affecting individual members of the Proposed Classes, including but not limited to:

a. Whether members of the Proposed Classes were required to work under Defendants' direction and control;

b. Whether Defendants improperly classified members of the Proposed Classes as "independent contractors" instead of "employees" within the meaning of NYLL;

c. Whether Defendants unlawfully failed to pay appropriate overtime compensation to members of the NYLL Overtime Class in violation of the NYLL;

d. Whether Defendants took deductions, directly or indirectly, for business-related expenses or failed to reimburse the proposed NYLL Deduction Class members in violation of the NYLL.

e. Whether Defendants unlawfully failed to pay spread of hours pay to members of the NYLL Spread of Hours Class in violation of the NYLL;

f. Whether Defendants unlawfully failed to pay members of the NYLL Frequency of Pay Class on a weekly basis in violation of the NYLL;

g. Whether Defendants failed to provide proper WTPA notices and pay statements to the NYLL WTPA Class members in violation on the NYLL;

h. Whether Defendants maintained lawful wage and hour records under NYLL;

i. Whether Defendants' actions were "willful" under the NYLL.

91.     This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

92.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the proposed Classes predominate over any questions affecting only individual members of the proposed Classes and because a class action is superior to other available methods of their fair and efficient adjudication of this litigation.

93.     Defendants' uniform policies and practices denied the proposed Classes the wages to which they are entitled to, including minimum wage, overtime pay, and spread of hours pay. The damages suffered by the individual members of the proposed Classes are small compared to the expense and burden of individual prosecution of this litigation.

94.     Plaintiff Kvinikadze intends to send notice to all members of the proposed Classes to the extent required by Rule 23. The names and addresses of the members of the proposed Classes will be available from Defendants.

<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>
**(Fair Labor Standards Act: Unpaid Overtime Wages, 29 U.S.C. § 207(a)(1))**

95.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

96.     Mr. Kvinikadze consents in writing to be a part of this action. Mr. Kvinikadze's written consent form is filed contemporaneously on the Court's docket with this Action. Plaintiff

Kvinikadze anticipates that as this case proceeds, other individuals will sign consent forms and join as party plaintiffs under the FLSA.

97.     At all relevant times, each of the Defendants constitute Plaintiff and the members of the proposed Collective's "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

98.     At all relevant times herein, Plaintiff and the members of the proposed Collective have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

99.     At all relevant times, Plaintiff and putative Collective are "employees," within the meaning contemplated by the FLSA.

100.     At all relevant times, upon information and belief, Defendants' gross revenue has exceeded $500,000.00.

101.     The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than 1 ½ times the regular rate of pay for work performed in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1).

102.     During their employment with Defendants, within the applicable statute of limitations, Plaintiff and other members of the Collective often worked in excess of 40 hours per work week without overtime compensation.

103.     Despite the hours worked by Plaintiff and the Collective, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay them overtime compensation.

104.     Based on the policies and practices articulated above, Plaintiff and the members of the Collective were uniformly denied FLSA mandated overtime premiums.

105. Also, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiff and the Collective, Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R §§ 516.5(a), 516.6(a)(1), 516.2(c).

106. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. §§ 216(b) and 255(a).

107. Because Defendants' violations of the FLSA are willful, a three-year statute of limitation applies. 29 U.S.C. § 255.

108. Plaintiff, on behalf of himself and the Collective, seeks recovery of unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest under the FLSA.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Fair Labor Standards Act: Failure to Pay Minimum Wage, 29 U.S.C. §206(a))

109. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of no less than the federal minimum wage. 29 U.S.C. § 206(a).

110. During their employment with Defendants, within the applicable statute of limitations, Plaintiff and other members of the Collective were told they would be paid by Defendants at a rate of $0.40 per foot of cable installed, measured according to the Optimum installation map rather than on site measurements. Because Plaintiff and other members of the Collective worked in teams of two, this wage would be divided in two, resulting in actual pay of $0.20 per foot of cable installed.

111. Defendants told Plaintiff the average Cable Layer would install 2,000 feet of cable per day, and at that accordingly, each Cable Layer could expect to make $2,000 per week.

112.    Because the maps were so poorly drawn, Plaintiff and other Cable Layers were often unable to lay 2,000 feet per day, despite commonly working over 12-hour shifts.

113.    Plaintiff was never provided with records of wages earned.

114.    Plaintiff and other members of the Collective have never been paid by Defendants for their labor laying cables for Optimum.

115.    Despite the hours worked by Plaintiff and the Collective, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay them any compensation.

116.    Based on the policies and practices articulated above, Plaintiff and the members of the Collective were uniformly denied FLSA minimum wage compensation.

117.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. §§ 216(b) and 255(a).

118.    Because Defendants' violations of the FLSA are willful, a three-year statute of limitation applies. 29 U.S.C. § 255.

119.    Plaintiff, on behalf of himself and the Collective, seeks recovery of unpaid minimum wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest under the FLSA.

## AS AND FOR A THIRD CAUSE OF ACTION
**(New York Labor Law: Failure to Pay Overtime Wages, Article 19)**

120.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

121.    At all relevant times herein, Plaintiff and the proposed NYLL Overtime Class Members have been entitled to the rights, protections, and benefits provided under the NYLL.

122. At all relevant times herein, each of the Defendants have been Plaintiff and the putative Classes' "employer" within the meaning of the NYLL.

123. At all relevant times herein, Plaintiff and putative Class Members have been "employees," within the meaning of the NYLL.

124. The overtime wage provisions contained in Article 19 of the NYLL, and its supporting regulations, apply to Defendants.

125. Defendants have failed to pay Plaintiff and the putative NYLL Overtime Class the overtime wages that they are entitled to under the NYLL.

126. Based on policies and practices articulated above, Plaintiff and the putative NYLL Overtime Class were not able to take lunch breaks as required by NYLL §162. Therefore, their weekly hours worked shall not include any mealtime deductions.

127. By Defendants' failure to pay Plaintiff and the putative NYLL Overtime Class premium overtime wages for hours worked in excess of 40 hours per week, they have willfully, within the meaning of NYLL § 663, violated NYLL §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 N.Y.C.R.R. Part 142.

128. Due to Defendant's violation of the NYLL, Plaintiff and the NYLL Overtime Members are entitled to recover unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest from Defendants.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(New York Labor Law: Failure to Pay Minimum Wage, Article 19 §652)**

129. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

130.     At all relevant times herein, Plaintiff and the members of the putative NYLL Minimum Wage Class have been entitled to the rights, protections, and benefits provided under the NYLL.

131.     At all relevant times herein, each of the Defendants have been Plaintiff and the putative Classes' "employer" within the meaning of the NYLL.

132.     At all relevant times herein, Plaintiff and putative class members have been "employees," within the meaning of the NYLL.

133.     Plaintiff and the NYLL Minimum Wage Class members worked in and around New York City and were picked up for work and dropped off from work in Brooklyn, thus New York City minimum wage applies.

134.     New York City minimum wage is $15.00 per hour.

135.     Defendants willfully and intentionally failed to compensate Plaintiff and the NYLL Minimum Wage Class at the New York City minimum hourly wage rate, as required by New York law.

136.     As a result of Defendants willful and unlawful conduct, Plaintiff and members of the NYLL Minimum Wage Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (New York Labor Law: Failure to Pay Spread of Hours)

137.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

138.     At all relevant times herein, Plaintiff and the members of the putative NYLL Spread of Hours Class have been entitled to the rights, protections, and benefits provided under the NYLL.

139.     At all relevant times herein, Plaintiff and the members of the putative NYLL Spread of Hours Class have been entitled to the rights, protections, and benefits provided under the NYLL.

140.     The Plaintiff and the NYLL Spread of Hours Class regularly had workdays that lasted more than ten hours in a single day.

141.     Defendants willfully and intentionally failed to compensate the Plaintiff and the NYLL Spread of Hours Class one hour pay at the New York minimum hourly wage rate when their workdays exceeded ten hours, as required by New York law.

142.     As a result of Defendants willful and unlawful conduct, Plaintiff and members of the NYLL Spread of Hours class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre-and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(New York Labor Law: Unlawful Wage Deduction)**

143.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

144.     At all relevant times herein, Plaintiff and the members of the putative NYLL Deduction Class have been entitled to the rights, protections, and benefits provided under the NYLL.

145.     At all relevant times herein, each of the Defendants have been Plaintiff and the putative Classes' "employer" within the meaning of the NYLL.

146.     At all relevant times herein, Plaintiff and putative class members have been "employees," within the meaning of the NYLL.

147.     The provisions of Article 19 of the NYLL and its supporting regulations related to

the failure to reimburse business-related expenses apply to Defendants.

148.     Section 193 prohibits deductions from employees' wages unless the deductions are expressly authorized and for the benefit of the employee and limited to the enumerated categories of permissible deductions.

149.     Defendants unlawfully required that Plaintiff and the NYLL Deduction Class bear the expenses of their employment which should have properly been borne by Defendants, including, but not limited to, the cost of gas for Optimum vans and the cost of uniforms, in violation of NYLL §§ 193 and 198(b).

150.     As a result of Defendants' unlawful conduct, Plaintiff and the putative NYLL Deduction Class are entitled to an award of damages equal to all unlawful payments required by separate transaction, in an amount to be determined at trial, plus pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(New York Labor Law: Failure to Furnish Accurate Wage Statements, §195(3))**

151.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

152.     At all relevant times, Plaintiff and the members of the putative NYLL WTPA Class have been entitled to the rights, protections, and benefits provided under the NYLL.

153.     At all relevant times herein, each of the Defendants have been Plaintiff and the putative Classes' "employer" within the meaning of the NYLL.

154.     At all relevant times herein, Plaintiff and putative class members have been "employees," within the meaning of the NYLL.

155.     The record-keeping provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants.

156.     Defendants did not provide Plaintiff and the putative NYLL WTPA Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

157.     NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated information required under the NYLL.

158.     As a result of Defendants' unlawful conduct, Plaintiff and the putative NYLL WTPA Class are entitled to an award of damages pursuant to NYLL § 198, up to $5,000 per Class Member, plus costs and attorneys' fees, as provided by NYLL § 663.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (New York Labor Law: Failure to Furnish Wage Notices, §195(1))

159.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

160.     At all relevant times, Plaintiff and the members of the putative NYLL WTPA Class have been entitled to the rights, protections, and benefits provided under the NYLL.

161.     At all relevant times herein, each of the Defendants have been Plaintiff and the putative Classes' "employer" within the meaning of the NYLL.

162.     At all relevant times herein, Plaintiff and putative class members have been "employees," within the meaning of the NYLL.

163.     The record-keeping provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants.

164.     Defendants did not provide Plaintiff and the NYLL WTPA Class with wage notices at the start of their employment, as required by NYLL § 195(1).

165.     NYLL §195 requires that employers furnish employees with wage notices containing accurate, specifically enumerated information required under the NYLL.

166. As a result of Defendant's unlawful conduct, Plaintiff and the putative NYLL WTPA Class are entitled to an award of damages pursuant to NYLL § 198, up to $5,000 per Class Member, plus costs and attorneys' fees, as provided by NYLL § 663.

## AS AND FOR A NINETH CAUSE OF ACTION
### (New York Labor Law: Failure to Pay Timely Wages, §191)

167. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

168. The timely payment of wages provisions of NYLL § 191 apply to Defendant and protect Plaintiff and the Class.

169. Plaintiff and the Class are manual workers entitled to weekly pay per NYLL §191(a).

170. Defendant failed to pay Plaintiff and the Class on a timely basis as required by NYLL § 191(a). Thus, Defendant underpaid Plaintiff and the Class.

171. Due to Defendant's violations of NYLL, Plaintiff and the Class are entitled to recover from Defendant the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## PRAYER FOR RELIEF

WHEREFORE, Representative Plaintiff, on behalf of himself and all members of the Proposed Classes and Collectives, pray for relief as follows:

A. That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B. That Defendants are found to have violated the provisions of the New York Labor Law as to the Representative Plaintiff and the Classes;

C. That Defendants are found to have violated the Federal Fair Labor Standards Act as to the Representative Plaintiff and the Collectives;

D. That Defendants' violations as described above are found to be willful;

E. An award to Representative Plaintiff and the Collectives and Classes for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

F. That Defendants further be enjoined to cease and deist from unlawful activities in violation of the FLSA and/or the NYLL;

G. An award of reasonable attorney's fees and costs pursuant to the NYLL and/or 29 U.S.C. § 216 and/or other applicable law;

H. Declaratory judgment that Defendants' conduct, policies and practices are unlawful and violate the FLSA and/or NYLL; and

I. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

# **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Representative Plaintiff on behalf of himself and all other similarly situated persons demand a trial by jury as to all issues to triable.

Dated:  April 19, 2023
       New York, New York

Christopher Q. Davis, Esq.
Rachel M. Haskell, Esq.
The Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, New York 10004
(646)-430-7930 (main)
(646)-349-2504 (fax)

*Counsel for Plaintiff and the Putative Collective
and Class(es)*