**WORKING SOLUTIONS**

January 23, 2024

**VIA ECF**

Hon. Marcia M. Henry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: *Kvinikadze v. Optimum et al*; Case No. 1:23-cv-02922-KAM-MMH

Dear Judge Henry:

This joint letter is submitted by Plaintiff Luka Kvinikadze ("Plaintiff" or "Mr. Kvinikadze") and Defendants, Altice USA Inc, CSC Holdings LLC (collectively the "Altice Defendants"), and ASI Fiber Group ("ASI Fiber", collectively with the Altice Defendants, the "Defendants") respectfully requesting that the Court approve the Settlement Agreement for the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims brought in this action pursuant to *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 206 (2d Cir. 2015). The Settlement Agreement is appended hereto as **Exhibit 1**.[1]

## I. Factual History and Settlement Agreement

In this action, Plaintiff alleged that on May 1, 2022, after responding to a job posting for Cable Layers on RussRek.com, a website that posts job listings and other classified advertisements in Russian, Plaintiff was hired by Gureev LLC ("Gureev") to perform work laying fiber optic for the Altice Defendants pursuant to a contract between Gureev, as Subcontractor, and ASI Fiber, as Contractor. Plaintiff further alleged that after working extremely long hours for approximately six (6) weeks without any compensation, Plaintiff left Gureev's employ. Plaintiff commenced the action seeking unpaid wages, other statutory damages, and attorneys' fees and costs.

Plaintiff's Amended Complaint alleged, more specifically, that he was jointly employed by the Defendants who were jointly and severally liable for violations of the FLSA and corresponding NYLL obligations. *See* First Amended Complaint ("Compl."), Dkt. No. 17. Specifically, Plaintiff stated claims for: (1) minimum wage violations, (2) unpaid overtime, (3) failure to pay spread of hours, (5) failure to provide wage statements and wage notices, (5) frequency of pay violations, (6) failure to reimburse business expenses, and (7) unlawful wage deductions. Defendants denied these allegations and asserted several affirmative defenses in their Answers. *See* Dkt. Nos. 34, 36. The

---

[1] The parties will submit an executed copy of the Settlement Agreement within two business days. While all parties have reviewed and agreed upon the Settlement Agreement, due to travel schedules and the Plaintiff's location abroad, the parties were unable to get the finalized version executed prior to the filing deadline for this letter motion.

Parties continue to dispute a number of legal issues, including whether Plaintiff can establish a joint employer relationship as well as the alleged number of hours worked.

On October 12, 2023, the Court stayed the case as to Gureev pursuant to 11 U.S.C. § 362, *Hernandez v. Immortal Rise, Inc.*, No. 1:11-cv-04360-RRM-LB, 2014 WL 991715, at *4 (E.D.N.Y. Mar. 13, 2014). The Altice Defendants and ASI Fiber were thus faced with the challenge of overcoming the fact that Plaintiff's alleged employer, Gureev—the only party Defendants allege has knowledge of and information regarding Plaintiff's claims—was not required to and/or willing to voluntarily participate in discovery.

On November 28, 2023, Defendants appeared for a Settlement Conference. The Parties, through their respective counsel and with the assistance of Magistrate Judge Henry, engaged in good faith, arm's-length negotiations. Plaintiff's counsel was able to complete a thorough damages assessment of Plaintiff's FLSA and NYLL claims based on detailed interviews with the Plaintiff. After a full-day court-ordered settlement conference, the Parties arrived at a resolution of the FLSA and NYLL claims, for a total of twenty-five thousand dollars ($25,000.00), inclusive of attorneys' fees and costs, which represents nearly all of Plaintiff's alleged underpayment and unpaid business expenses as well as alleged statutory penalties under the Wage Theft Prevention Act. The Settlement Agreement reflects a reasonable compromise of the *bona fide* disputed issues in this case.

The Parties believe that the terms and conditions of the settlement are fair, reasonable, and in their mutual best interests, considering the documents and information exchanged by the Parties in advance of, and at, the settlement conference. In addition, Plaintiff believes that the certainty of settlement is better than the uncertain outcome of extended litigation, and Plaintiff prefers to receive a payment now without the delay and uncertainty that litigating the matter would entail.

**II.    The Court Should Find the Settlement Fair and Reasonable**

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 1:14-cv-00311, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Emp't Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In evaluating the proposed settlement, this Court should consider the totality of the circumstances, including the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced

Hon. Marcia M. Henry
Page 3 of 7

counsel"; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335.

    A. *Plaintiff's Range of Possible Recovery*

The proposed settlement is substantial and is within the range of reasonableness of recovery if Plaintiff had succeeded at trial, when considering that an estimate of Plaintiff's damages calculation reflected $39,218.20. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particular sum." *Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal citations and quotations omitted).

Here, Plaintiff's damages assessment utilized an estimated sixteen-hour workday, 6 days a week for a period of six consecutive weeks. This average was determined based on alleged directives to Plaintiff, from Gureev, to arrive at a centralized location in Brooklyn at 5am to be transported to a location on Long Island where Plaintiff would be assigned an Optimum van to drive to worksites. The damages assessment applied the proposition that Plaintiff, generally, did not arrive back to this centralized location in Brooklyn until 9pm, or later. Because Plaintiff alleged he was not paid any wages at all, his damages were calculated using the $15/hour minimum wage and $22.50/hour overtime rate. Plaintiff also alleged he was working more than 10-hour days; therefore, the damages assessment included one hour of pay each day worked at the minimum wage, for spread of hours pay. Plaintiff's damages assessment also assumed that Plaintiff spent approximately $70 per day on gas while allegedly driving Optimum vans to his assigned worksites in order to complete his job of laying fiber optic cable.

Throughout the litigation, there were sharply contested factual and legal disputes that went to the heart of Plaintiff's alleged damages. Significantly, the Altice and ASI Defendants vigorously contested that they could be held liable as joint employers for Gureev's failure to pay Plaintiff. Defendants expressed skepticism over the purported number of hours allegedly worked by Plaintiff, and proffered Subcontract agreements and information based upon which they argued that Plaintiff was an independent contractor. With the action being stayed as to Gureev, Defendants also contended that they did not have the requisite knowledge or information concerning the alleged hours worked.

Pursuant to the Settlement Agreement, after attorneys' fees and costs, Plaintiff will receive $15,405.60, representing about all of Plaintiff's alleged and approximate underpayment. Based on Plaintiff's Counsel's damages assessment, this settlement represents a recovery for the Plaintiff well within the range of reasonableness when compared to his possible recovery and the attendant risks of litigation. Notably, Defendants maintain that: 1)Plaintiff was not jointly employed by them, 2) any wages owed would be subject to Gureev's bankruptcy proceeding, 3) Plaintiff was properly an independent contractor, 4) Plaintiff did not work the hours alleged, and even if he did work such hours, that they did not have the requisite knowledge of such hours or control over Plaintiff to be subject to liability. In support, ASI Fiber produced its subcontract agreements, under which Gureev was required to indemnify it for claims such as the ones in this action, as well as proofs of payments made to Gureev in full satisfaction of all services rendered, which exceeded Five Million Dollars for the 2022 calendar year. As such, Plaintiff risks receiving substantially less if Defendants prevail on summary judgment or at trial.

> B. *The Extent to Which the Settlement Will Enable the Parties To Avoid Anticipated Burdens And Expenses In Establishing Their Respective Claims And Defenses And The Seriousness Of The Litigation Risks Faced By The Parties*

A settlement avoids a trial on the merits that would have an uncertain potential outcome. *See Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In reviewing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiffs against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).

Considering these factors, the settlement represents a reasonable compromise of the *bona fide* disputes in this matter, which largely relate to whether plaintiff can establish joint employment, and the amount of hours Plaintiff worked. While Plaintiff's counsel anticipates favorable outcomes at trial and appeal, which Defendants dispute, the fact remains that the nature of jury trial and appellate practice is inherently uncertain and lengthy.[2] The settlement eliminates these risks.

Without admitting any liability or wrongdoing, Defendants are making a business decision to enter this settlement and forego litigation over disputed issues of law and fact in order to bring an early and cost-effective resolution to this matter and to avoid continued litigation costs and the uncertain nature of extended litigation, especially given the absence of the direct employer, Gureev.

On the other hand, Plaintiff is willing to resolve his claims because he will receive immediate payment and will avoid the uncertainty of summary judgment motion practice, and possibly a trial. In Plaintiff's counsel's assessment, after a thorough review of the facts and law, after attorneys' fees and costs, the settlement amount the Plaintiff will receive represents 100% of the alleged underpayment recovery that Plaintiff contends he likely would have achieved had he prevailed on all his claims, plus a modest $1,425.60 representing any entitlements to liquidated damages, interest, or penalties. Weighing the benefits of an almost immediate, guaranteed payment to the Plaintiff against the risks and burdens associated with proceeding with a lengthy litigation, the settlement is reasonable, and these factors weigh in favor of approval.

> C. *Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). Importantly, a settlement like this one, reached with the help of a third-party neutral, enjoys a "presumption that the settlement achieved meets the requirements of due process." *See Johnson v. Brennan*, 10 Civ. 4712 CM, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011); (citations omitted); *see also In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145 at *2, 2013 WL 1828598 (S.D.N.Y. April 30, 2013) (granting preliminary approval in part based on participation of neutral mediator). At all times, the Parties' negotiations were on an arm's-length basis by attorneys well-versed in wage and hour litigation and with the assistance of Judge Henry as a neutral mediator similarly experienced in this area of the law. Because the settlement involves a clear and *bona fide*

---

[2] Defendants' counsels disagree that Plaintiff would be successful at trial and/or appeal but agrees that the litigation risks are inherently uncertain and expensive and that a settlement here caps those risks and allows the parties to move on.

wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

    D.  *Possibility of Fraud or Collusion*

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients throughout the negotiations on the benefits and risks of continued litigation.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached at a Court-ordered settlement conference with Magistrate Judge Henry serving as a neutral intermediary after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

## III.    Plaintiff's Counsel is Entitled to a Reasonable Fee and Actual Costs

Under the Proposed Settlement Agreement, Plaintiff's attorneys' costs are $1,891.60 and fees are $7,702.80. Plaintiff's counsel submits that the requested fees and costs are reasonable. A court may calculate a reasonable attorneys' fee either by determining the so-called "lodestar" amount or by awarding a percentage of the settlement. *See McDaniel v. Cty. of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010).

Here, Plaintiff's attorneys are seeking actual costs of $1,891.60 and fees representing one-third of the settlement after deducting the actual costs. Pursuant to the written retainer agreement between The Law Office of Christopher Q. Davis, PLLC (the "Firm") and the Plaintiff, Plaintiff agreed that the Firm would represent him on a contingency basis in an attempt to recover unpaid wages and that the Firm would be entitled to actual costs plus fees of either 33.33% of any gross recovery or the full amount of any Court-awarded attorneys' fees.

The actual lodestar amount in this matter is calculated at approximately $16,000. The time records containing the lodestar amount for this matter are attached hereto as **Exhibit 2**. The lodestar amount was calculated using an hourly rate of $450 for attorney Rachel Haskell, $425 for Jessica Cahill, $100 for paralegals, and $75 for interns. For non-contingency matters, the firm typically bills Ms. Haskell at a rate of $500 an hour or more; Jessica Cahill at $450 or more, and paralegals and law clerks at $125. The actual costs expended in litigating this matter are $1,891.60. The expense records for this matter are attached hereto as **Exhibit 3**.

Courts usually apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.* (citation omitted); *see also Parker*, *v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (endorsing the *Goldberger* "cross check[]"). As part of the cross check, the lodestar is determined by multiplying

Hon. Marcia M. Henry
Page 6 of 7

the hours reasonably expended on the case by a reasonable hourly rate. *See Hicks v. Morgan Stanley, et. al.*, No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005). In calculating the lodestar for cross-check purposes, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldfberger*, 209 F.3d at 50 (citation omitted). Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]" *Id.*

In this District, hourly rates of $300-$450 for partners, $200-$325 for senior associates, $100-200 for junior associates and $75-$100 for law clerks have been awarded in employment cases. *See, e.g.*, *Griffin v. Astro Moving & Storage Co. Inc.*, No. 11 Civ. 1844-MKB, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) ("[r]ecent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates.") (internal quotation marks omitted); *Pall Corp. v. 3M Purification Inc.*, No. 97 Civ. 7599, 2012 WL 1979297, at *4 (E.D.N.Y. June 1, 2012) (citation and internal quotation marks omitted) (collecting cases); *Cadles of Grassy Meadows II, L.L.C. v. St. Clair,* No. 10 Civ. 1673, 2012 WL 6617448, at *2 (E.D.N.Y. Dec. 18, 2012) ("In the Eastern District of New York, courts have determined reasonable hourly rates to be approximately $300–[$]450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.") (internal quotation marks omitted) (collecting cases).

Here, Plaintiff's counsel does not seek a lodestar multiplier and in fact is requesting less than they have billed on this matter. The time spent by Plaintiff's Counsel is described in the contemporaneous time records attached hereto as Exhibit 2. The hours worked by Plaintiff's counsel resulted in a lodestar of approximately $16,000.

The Plaintiff has been represented by The Law Office of Christopher Q. Davis, PLLC, a firm that almost exclusively practices plaintiff-side labor and employment law. Rachel Haskell is a Partner at The Law Office of Christopher Q. Davis and previously worked for Mr. Davis at Stoll, Glickman & Bellina, LLP exclusively in the Firm's Employment Litigation Practice. She has been practicing law for over 10 years, is licensed both in New York and Massachusetts, and has focused her practice exclusively on labor and employment law. Ms. Haskell has experience working on employment matters both in private practice and prior to entering private practice while interning with the U.S. Equal Employment Opportunity Commission. Ms. Haskell has been the lead associate and junior partner on numerous wage and hour cases, including both individual cases such as this as well as class and collective actions, including but not limited to, *Oleniak et al. v. Time Warner Cable, Inc. et al.*, 1:12-cv-03971(KPF) (S.D.N.Y.); *Jacobs et al v. Major Energy Servs. LLS/Respond Power LLC et al.*, 2012-CV-04842 (E.D.N.Y.); *Alexander et. al. v. Safeguard Storage et al*., 1:13-cv-06061-AMD-RLM (E.D.N.Y.); *Park v. FDM Group Inc*., 1:16-cv-01520-LTS (S.D.N.Y.); *Hartley et al v. Wells Fargo & Co. et al.*, 2:14-cv-05169 (E.D.N.Y.); and *Lobbe v. Cablevision Sys. Corp., et al*., 1:16-cv-02207-AKH (S.D.N.Y.).

## IV.    Conclusion

For the reasons set forth above, the Parties respectfully request that the Court approve the settlement as reflected in the Agreement. Plaintiff's counsel further requests that the Court approve the attorneys' fee award as fair and reasonable.

Hon. Marcia M. Henry
Page 7 of 7

Should the Court have any questions, please do not hesitate to contact us.

                                                         Sincerely,
                                                        /s/
                                                        Rachel M. Haskell, Esq.

cc:      All Counsel (via ECF)